UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
00 MAR -7 AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR - 7 2000

| | |
|---|---|
| MARCIA C. MONTGOMERY and BRIDESMAIDS, INC., on behalf of themselves and all others similarly situated, ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Civil Action No. CV-99-S-1302-S |
| GENERAL MOTORS CORPORATION, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This action is before the court on defendant's objections to the summary denial of its motion to dismiss by the United States Magistrate Judge. (Doc. No. 24.) The court does not reach the merits of defendant's objections, however, because it concludes this case is due to be remanded for a lack of subject matter jurisdiction *ab initio*.

### I. BACKGROUND

Marcia Montgomery filed this action in the Circuit Court of Jefferson County, Alabama, on February 10, 1999. She sued General Motors Corporation, both in her capacity as an individual purchaser of a 1996 GMC "Yukon," and on behalf of a putative class composed of all Alabama residents who had purchased or leased 1995, 1996, or 1997 models of defendant's Chevrolet "Tahoe" or GMC "Yukon" sport

utility vehicles. Ms. Montgomery amended her complaint on March 10, 1999, adding Bridesmaids, Inc. as a named plaintiff and additional class representative. Plaintiffs alleged that General Motors had represented in printed materials and written "specifications and/or Window Stickers" that such vehicles "came equipped with a 30-gallon Fuel Tank,"[1] when in fact the capacity was "significantly" less than that.[2] For such reasons, plaintiffs asserted that General Motors was liable for breach of contract, breach of warranty, and fraud.

Plaintiffs made a non-specific claim for damages based on defendant's alleged violations of Alabama law. They asked:

> 3. That this court, after a trial, enter a judgment against Defendant GM for money damages, in an amount which shall include, but not be limited to:
>
> (a) The cost to replace the existing Fuel Tanks with a Fuel Tank with a 30-gallon capacity;
>
> (b) other compensatory damages;
>
> (c) all costs and expenses of this litigation including, but not limited to, expert fees and expenses, deposition costs and expenses, notice costs and expenses, court costs and other

---

[1] Amended Complaint ¶ 17.

[2] *Id.* ¶ 18. As best this court can ascertain from the pleadings, briefs, and evidentiary submissions, the variance between defendant's representation and the actual fuel capacity of the subject tanks is at most only 1.5 gallons; in other words, a deviation of some five percent (1.5 ÷ 30). Whether such a deviation merits the adjective "significant" remains to be seen.

2

recoverable disbursements.[3]

Plaintiffs neither expressly pled nor affirmatively disclaimed punitive damages in their amended complaint. Further, plaintiffs objected to defendant's request for admissions on that issue, asserting that any response to such questions at an early stage in the action was "premature."[4]

General Motors removed the action to this court on May 21, 1999, asserting diversity jurisdiction.[5] In typical cases, a defendant must remove within thirty days after being served with a copy of the complaint:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (first paragraph). The second paragraph of

---

[3] *Id.* at 9.

[4] In their supplemental responses to defendant's request for admissions, plaintiffs admitted they would seek attorneys' fees as permitted by law. The actual text of the amended complaint foreshadowed such an admission. See note 10 *infra*.

[5] 28 U.S.C. § 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." The amended complaint states that plaintiffs are Alabama residents and alleges that defendant is a Delaware corporation with its principal place of business in Michigan. See Amended complaint ¶¶ 2-4.

3

section 1446(b) goes on to provide, however, that:

> <u>If the case stated by the initial pleading is not removable</u>, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order <u>or other paper</u> from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.* (second paragraph) (emphasis supplied). General Motors based its removal on plaintiffs' objections to its request for admissions on the issue of punitive damages, which it received on May 4, 1999.

Plaintiffs' motion to remand, an issue vigorously contested by the parties in brief, was denied in a lengthy opinion entered by a United States Magistrate Judge on August 25, 1999. The magistrate found that General Motors had established the requisite amount in controversy by a preponderance of the evidence, based on his review of the evidence adduced in support of removal. *See Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("Thus, we hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the ... jurisdictional requirement."). Such evidence included plaintiffs' non-specific claims for damages

4

in the amended complaint and plaintiffs' evasive responses to defendant's request for admissions.

In discussing why plaintiffs' motion to remand was due to be denied, the magistrate noted that the $75,000 jurisdictional threshold was crossed by two independent legal steps. First, the magistrate presumed plaintiffs eventually would claim punitive damages on their fraud claims, and held that such could be aggregated in satisfaction of the amount in controversy. Second, the magistrate remarked that a potential award of attorneys' fees under Alabama Code § 8-20-8 also could be aggregated upon proof of breach of warranty.

Plaintiffs' objections to the magistrate's order were summarily overruled on October 4, 1999, by Senior United States District Judge J. Foy Guin, Jr. (Doc. No. 16.) Their request for interlocutory appeal under 28 U.S.C. § 1292(b) was denied by the magistrate on December 3, 1999. (Doc. No. 22.)

## II. DISCUSSION

This court's inquiry into subject matter jurisdiction leads to the inevitable conclusion that this case was improvidently removed, and that the action is due to be summarily remanded. 28 U.S.C. § 1446(c)(4) provides that "[i]f it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not

be permitted, the court shall make an order for summary remand." 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[6] Of course, the word "shall" is directory, mandatory, and non-discretionary.[7]

A.  **Punitive Damages**

In his order denying remand, the magistrate emphasized the

---

[6] Until 1988, 28 U.S.C. § 1447(c) read as follows: "If at any time before final judgment <u>it appears that the case was removed improvidently and without jurisdiction</u>, the district court shall remand the case, and may order the payments of just costs." (emphasis supplied.) That statute placed a continuing obligation on a district court to ensure that subject matter jurisdiction existed <u>at the time of removal</u>. If at any point before final judgment it appeared that subject matter jurisdiction did not exist at the time of removal, the action was necessarily due to be remanded. Congress amended the statute, effective November 19, 1988, to provide that "[i]f at any time before final judgment <u>it appears that the district court lacks subject matter jurisdiction</u>, the case shall be remanded." (emphasis supplied.)

As stated by the Supreme Court in *Robinson v. Shell Oil Company*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), a court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* at ___, 117 S.Ct. at 846. Indeed, a court's "inquiry must cease if the statutory language in unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). Finally, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at ___, 117 S.Ct. at 846.

With those general principles in mind, this court finds that the revised language in 28 U.S.C. § 1447(c) is unambiguous, and its portent unmistakable. Just as the plain language of the earlier version of 28 U.S.C. § 1447(c) focused exclusively on the state of affairs as of the date of removal, the clear language of the current version directs district courts to remand for lack of subject matter jurisdiction at any time before final judgment. The phrase "any time before final judgment" necessarily encompasses events occurring long after removal is initially effectuated. *See Bailey v. Wal-Mart Stores, Inc.*, 981 F. Supp. 1415, 1417 (N.D. Ala. 1997) (Acker, J.).

[7] *See Black's Law Dictionary* 1379-80 (7th ed. 1999).

fact that plaintiffs had not affirmatively disclaimed their right to claim and recover punitive damages on behalf of the putative class. As a result, he expressed the opinion that such damages could be aggregated in order to satisfy the amount in controversy:

> Where a plaintiff seeks to represent a state-wide class which would include as many as 5,000 potential claimants on allegations of ... fraud expressly reserving the right to amend the complaint at any time to seek ... punitive damages[,] ... the complaint and comparative evidence establish that federal jurisdiction more likely than not exists in the absence of an express waiver or limitation for these claims.

(Doc. No. 11, at 17-18.) The magistrate implicitly relied upon *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353 (11th Cir. 1996), for that proposition.

The Eleventh Circuit recently observed, however, that "*Tapscott's* holding about aggregation of punitive damages is inconsistent with the earlier holding on the same issue in *Lindsey [v. Alabama Telephone Company*, 576 F.2d 593 (5th Cir. 1978)]." *See Cohen v. Office Depot, Inc.*, No. 98-4787, 2000 WL 217490 (11th Cir. Feb. 24, 2000) ("*Cohen II*"). In *Cohen II*, the Eleventh Circuit vacated part of an earlier panel opinion, which applied *Tapscott* to the issue of aggregation of punitive damages. *See Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1295 (11th Cir. 1999) ("*Cohen I*") (permitting aggregation of punitive damages in order to satisfy the

7

amount in controversy). The *Cohen II* court observed the well-established rule that "each succeeding panel [of the Eleventh Circuit] is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled *en banc*, or by the Supreme Court." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*). *See also Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) ("The prior precedent rule, which binds later panels to the decisions of former panels, is essential to maintaining stability in the law.").

The former Fifth Circuit's panel decision in *Lindsey*[8] was decided prior to the Eleventh Circuit's panel decision in *Tapscott*, and it addressed an identical issue — "whether a class claim for punitive damages can be considered in the aggregate in order to establish diversity jurisdiction over all potential members of a class, or must instead be attributed *pro rata* to each class member." *Cohen II*, 2000 WL 217490, at *4. Accordingly, the *Cohen II* court found that the rule in *Lindsey* must be followed in determining whether punitive damages can be aggregated. *See id.* at *5 ("Because *Lindsey* predates *Tapscott*, we must follow *Lindsey* as

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

8

the precedent of this Court.").

The factual background and holding of the former Fifth Circuit in *Lindsey* was summarized at length by the Eleventh Circuit in *Cohen II*:

> Lindsey involved a state law class action suit against two telephone companies alleged to have unlawfully extracted excessive cash deposits from the class. See *Lindsey*, 576 F.2d at 593. The defendants removed the case to federal court on diversity grounds. See *id*. at 593-94. The complaint, as construed by the Court, sought: (1) $2,000 compensatory damages for Lindsey, (2) an unspecified sum of compensatory damages for the class, which contained an unspecified number of plaintiffs, and (3) $1,000,000 punitive damages on behalf of the class. See *id*. at 595.
>
> . . .
>
> Because the *Lindsey* plaintiff had failed to plead a specific number of class members, the Court explained that it could not determine "what dollar amount represent[ed] the 'amount in controversy' for each member of the class." *Id*. at 595 (emphasis added). Noting that the grounds for removal jurisdiction must be found in the plaintiff's complaint itself, the Court explained that "it was not open for [the] defendants to attempt to show that the class was small enough that the claims on its behalf exceeded the sum of $10,000 per capita," *id*., which was the amount in controversy requirement at that time, see *id*. at 593.
>
> Because it could not tell from the complaint the number of class members, the *Lindsey* Court could not determine whether each member's claim satisfied the jurisdictional amount, and it therefore held that the total specified damage claim for the class — $1,002,000 — had not been shown to satisfy the amount in controversy requirement. See *id*. at 595. A necessary

9

> part of *Lindsey*'s reasoning is the holding that for amount in controversy purposes a class punitive damages claim must be allocated *pro rata* to each class member. Otherwise, the result in that case would have been different. If the *Lindsey* Court had concluded that a class claim for punitive damages could be attributed *in toto* to each class member, *i.e.*, considered in the aggregate, for amount in controversy purposes, the $1,000,000 punitive damages claim clearly would have sufficed, regardless of whether the number of class members in *Lindsey* had been two or two million. The number of class members would have been irrelevant, instead of the critical factor in the decision. Thus, *Lindsey* inescapably stands for the proposition that a federal court cannot exercise diversity jurisdiction over a class action — even with completely diverse parties — solely because the total punitive damages claim on behalf of the entire class exceeds the jurisdictional amount in controversy. Instead, under *Lindsey*, the punitive damages claim for the class must be assigned on a *pro rata* basis to each class member for amount in controversy purposes. *See id.*

*Cohen II*, 2000 WL 217490, at *2-*3.

This court finds no distinction between the factual background of *Lindsey* and the present action.[9] As stated by the Eleventh Circuit in *Cohen II*, *Lindsey*, not *Tapscott*, provides the proper precedential rule for decision. Just as punitive damages could not be aggregated to satisfy the amount in controversy in *Lindsey*, they cannot be aggregated here. Accordingly, that argument in support of removal does not persuade this court by a preponderance of the

---

[9] The state law claims in *Lindsey* were also founded on the law of the State of Alabama.

10

evidence that at least $75,000 is in controversy as to either named plaintiff, much less each putative class member.

### B. Attorneys' Fees

As an alternative basis for denying remand, the magistrate relied on the fact that an award of attorneys' fees was cognizable under Alabama Code § 8-20-8, if plaintiffs proved that defendant breached an express or implied warranty. That statute provides:

> **§ 8-20-8. Warranty obligations of manufacturers and dealers to consumers.**
>
> Every manufacturer and new motor vehicle dealer shall fulfill the terms of any express or implied warranty concerning the sale of a new motor vehicle to the public of the line make which is the subject of a contract or franchise agreement between the parties. If it is determined by a court of competent jurisdiction that either the manufacturer or new motor vehicle dealer, or both, have violated an express or implied warranty, the court shall add to any award or relief granted an additional award for reasonable attorney's fees.

Ala. Code § 8-20-8. The magistrate cited the Alabama Supreme Court's decision in *Tittle v. Steel City Oldsmobile GMC Truck, Inc.*, 544 So. 2d 883 (Ala. 1989), for the proposition that section 8-20-8 "applies to consumers and requires an award of attorney[']s fees for breach of warranty." (Doc. No. 11, at 18.) As was the case with punitive damages, the magistrate judge impliedly assumed that attorneys' fees could be aggregated to satisfy the amount in controversy in a putative class action.

11

Upon review of *Tittle*, this court concludes that Section 8-20-8 does not authorize an award of attorneys' fees to consumers like the plaintiffs here. Section 8-20-8 is a component of the Alabama Motor Vehicle Franchise Act (the "Act"), Alabama Code §§ 8-20-1 to 8-20-13. That Act "deals almost exclusively with the rights and duties that exist between <u>automobile dealers</u> and <u>manufacturers</u>," and was enacted "to give balance to the inequality of bargaining power between individual <u>dealers</u> and their <u>manufacturers</u>." *Tittle*, 544 So. 2d at 887 (emphasis supplied). In *Tittle*, the Alabama Supreme Court conceded that the only provision within the Act "arguably" applying to consumers like plaintiffs was § 8-20-8. *Id*. *See also Page v. Dobbs Mobile Bay, Inc.*, 599 So. 2d 38, 41-42 (Ala. Civ. App. 1992). From that position, however, the *Tittle* court strongly indicated that consumers were not protected by section 8-20-8.

> Section 8-20-8 simply authorizes a court of competent jurisdiction to award attorney fees whenever it determines "that either a manufacturer or new motor vehicle dealer, or both, have violated an express or implied warranty." The only reference to consumers in the body of the provision, and it is an <u>oblique reference at best</u>, can be found in the first sentence of the section. ...
>
> The only explicit reference to the term "consumer" in the Act is found in the title of § 8-20-8 .... General rules of statutory construction, however, prohibit us

12

>from considering the title of a statute as a substantive portion of the enactment. ... Thus, we can not infer from the term "consumer," in the title of the section, that the legislature intended to apply that term, as it is restrictively defined throughout the Code, instead of the term "public," which is the term used by the legislature in the body of the enactment. Moreover, the term "consumer" does not appear in the definitional section of this chapter. <u>While not dispositive of the issue, the noticeable absence of the term from the definitional section, § 8-20-3, further suggests that the Act was not designed to provide a consumer protection scheme supplanting or even supplementing the breach-of-warranty provisions found in Alabama's version of the U.C.C.</u>

*Tittle*, 544 So. 2d at 887 (emphasis supplied) (citations omitted). Neither the *Tittle* court, nor any other Alabama court following its lead, has held that consumers like plaintiffs could not recover attorneys' fees under Alabama Code § 8-20-8 as a matter of law. *See id.* (assuming *arguendo* that § 8-20-8 applies to consumers for purposes of addressing a related issue); *Page*, 599 So. 2d at 42 (not reaching an ultimate decision on the issue since plaintiffs failed to establish that defendant breached an express or implied warranty).

Nonetheless, the degree of doubt created by the Alabama Supreme Court in *Tittle* cannot be ignored. Given that all doubts about the propriety of subject matter jurisdiction should be resolved in favor of remand, this court finds that the award of attorneys' fees under Alabama Code § 8-20-8 is far too tenuous a

13

claim upon which to determine satisfaction of the amount in controversy.

Further, the Eleventh Circuit recently observed that

> a statutory claim for attorney fees may not be considered in the aggregate for amount in controversy purposes, at least not when both of these factors are present: (1) the class members have a "separate and distinct" right to recover attorney fees under the relevant statute; and (2) state law provides that the statutory attorney fees serve to compensate the class members for their injuries.

*Cohen II*, 2000 WL 217490, at *10 (citing *Darden v. Ford Consumer Finance Company, Inc.*, 200 F.3d 753, 758-59 (11th Cir. 2000)). Even if Section 8-20-8 authorized consumers like plaintiffs to recover attorneys' fees upon proof of breach of warranty by a manufacturer like General Motors, this court finds that the Eleventh Circuit's decisions in *Darden* and *Cohen II* prohibit this court from aggregating such fees to satisfy the amount in controversy. The text of Section 8-20-8 indicates not only that putative class members have a "separate and distinct" right to recover such fees, but also that such fees serve a compensatory purpose.

For the above reasons, this court finds that defendant failed to meet its burden of justifying removal on the basis that attorneys' fees are supposedly recoverable under Section 8-20-8 of

14

the Code of Alabama.[10]

## III. CONCLUSION

This court concludes that both bases supporting the magistrate's findings on the amount in controversy crumble under the weight of analysis.[11] Accordingly, defendant failed to meet its burden for justifying removal, by proving by a preponderance of the evidence that at least $75,000 is in controversy as to each putative class member. *Cf. Thomas v. Fidelity Brokerage Services, Inc.*, 977 F. Supp. 791, 793 (W.D. La. 1997) (noting that a defendant meets burden by "demonstrating it is facially apparent [that] plaintiff's claims are likely above jurisdictional minimum") (citing *Allen v. R&H Oil & Gas Company*, 63 F.3d 1326, 1335 (5th

---

[10] The court also finds merit in plaintiffs' argument that removal was untimely if premised on the potential recovery of attorneys' fees, because they requested such fees in their complaint:

> That this court, after a trial, enter a judgment against Defendant GM for money damages, in an amount which shall include, but not be limited to ... all costs and expenses of this litigation including, but not limited to, expert fees and expenses, deposition costs and expenses, notice costs and expenses, court costs and other recoverable disbursements.

(Complaint, at 9 (emphasis supplied).) Attorneys' fees certainly comprise a portion of "all costs and expenses of this litigation." Under this analysis, defendant was not justified in relying on the "other paper" exception, located in the second paragraph of 28 U.S.C. § 1446(b). Instead, defendant should have removed within thirty days of the time when it was served with a copy of plaintiffs' complaint and a summons. *See* 28 U.S.C. § 1446(b) (first paragraph).

[11] The court further notes that defendant's remaining arguments in support of satisfying the amount in controversy, which focus on compensatory and injunctive relief, are without merit. (Doc. No. 1, at 3-4.)

15

Cir. 1995)).

Defendant's "law of the case" argument, which is grounded in notions of judicial efficiency, is unpersuasive in light of this court's limited subject matter jurisdiction. Removal statutes must be strictly construed, with all doubts about federal jurisdiction being resolved in favor of remand. *See generally Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11th Cir. 1994). Further, this court is under an obligation to inquire into subject matter jurisdiction whenever it may be lacking, and must conduct a plenary review to that effect. *See Baltin v. Alaron Trading Corporation*, 128 F.3d 1466, 1468 (11th Cir. 1997). Such a review in this case leads this court to conclude that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed [for lack of subject matter jurisdiction] is not reviewable on appeal ....").

For the foregoing reasons, this court concludes that this action is due to be remanded. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

16

DONE this 7th day of March, 2000.

United States District Judge

17